## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 10 2016, 9:15 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Scott Klemme, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 10, 2016 <br><br> Court of Appeals Case No. <br> 49A04-1507-CR-869 <br><br> Appeal from the <br> Marion Superior Court <br><br> The Honorable <br> Amy M. Jones, Judge <br> The Honorable Shannon L. <br> Logsdon, Commissioner <br><br> Trial Court Cause No. <br> 49G08-1506-CM-20792 |

**Kirsch, Judge.**

[1] Scott Klemme ("Klemme") appeals the trial court's decision to revoke his probation, raising the followed restated issue: whether the trial court abused its discretion when it found that Klemme violated his probation by failing to report to the probation department and by repeatedly entering a prohibited geographic zone.

[2] We affirm.

## Facts and Procedural History

[3] On the evening of June 13, 2015, Indianapolis Metropolitan Police Officer Andrew Girt was dispatched to a disturbance at a home on Kessler Lane East Drive in Marion County, Indiana. Officer Girt encountered two individuals at the residence, Klemme and his mother ("Mother"). Klemme told Officer Girt that he and his mother had had a "disagreement," but Mother reported that Klemme had hit her. *Appellant's App.* at 14. The State charged Klemme with one count of Class A misdemeanor battery resulting in bodily injury and one count of Class B misdemeanor battery.

[4] On June 17, 2015, Klemme pleaded guilty to the Class A misdemeanor battery charge, and, as part of the plea agreement, the State dismissed the Class B misdemeanor battery charge. That same day, immediately following the guilty plea hearing, the trial court conducted the sentencing hearing. Pursuant to the plea agreement, the trial court sentenced Klemme to 365 days in the Marion County Jail with credit for four days for time served, and it suspended the remaining 361 days, entered a No Contact order with Mother, and placed

Klemme on probation. Klemme agreed to "All Standard Conditions and Fees of Probation," which included reporting to the probation department. *Id*. at 23-24. Also, as a condition of his probation, Klemme was required to wear a GPS monitoring device on his ankle ("the GPS device"), which would be monitored by Marion County Community Corrections ("MCCC"). *Id*. at 24-25.

[5] After leaving the sentencing hearing on June 17, Klemme called his girlfriend to pick him up, and he went to her home. He did not report to the probation department. The next afternoon, June 18, Klemme went to the MCCC office at around 4:30 p.m. to receive his GPS device. *Tr*. at 15. MCCC explained to Klemme that the GPS device would alert Klemme, by vibrating, if he entered what had been designated as an exclusionary zone, which was an area that he was not allowed to enter. If he received the vibration, it was to serve as a warning to him, and he was instructed to turn around and head the other direction.

[6] On the night of June 18 and into the early morning hours of June 19, MCCC received email alerts that Klemme entered the exclusionary zone at least three to four times. On June 19, 2015, MCCC filed a notice of community corrections violations, alleging that Klemme had entered the exclusionary zone, failed to comply with MCCC rules and regulations, and failed to maintain communication with MCCC. On June 23, the State filed a separate notice of probation violation, alleging that Klemme failed to report to probation intake and failed to comply with MCCC. On June 30, the trial court held a hearing on the charged probation violations.

[7] At the hearing, William Beck ("Beck"), a MCCC employee and liaison to the courts, testified. He explained that Klemme was wearing a type of GPS device that was equipped to alert the defendant if he or she entered an exclusionary zone, also known as a "victim zone," which is a one-mile radius around a specific point and is intended to protect the victim in the case. *Id*. at 6-7, 9. Generally, defendants are told that there are such restricted areas, but they are not advised of the precise location, in order to protect the victim. However, Beck noted that "[i]n this case [the victim] was his mother so of course he would have known where his mother resided." *Id*. at 8. In addition to notifying the defendant in a case, the GPS device generates an email to the on-call MCCC officer to notify him or her that the defendant has entered the prohibited exclusionary zone. Beck explained that "there is . . . a buffer zone" surrounding the exclusionary zone, which gives the defendant "a warning to let [him or her] know that you need to go another direction; you're going towards the victim zone." *Id*. at 7-8. Beck testified that Klemme entered the exclusionary zone at least three to four times and that he went "either in or right next to" Mother's home. *Id*. at 11. The State also presented computer-generated maps, which reflected the GPS coordinates of Klemme's various locations inside the prohibited area.

[8] Klemme also testified at the hearing. He stated that on June 18, he went to MCCC, but "never did report" to probation. *Id*. at 19. As to the GPS device, Klemme testified to having gone to various locations on the night of June 18 and early morning hours of June 19, looking for a place to spend the night,

because his girlfriend would not let him stay with her. Klemme stated that during the night he went to the home of several friends who either were not awake, did not answer the door, or refused his request to stay the night. Klemme acknowledged that one of the friends lived "cattycorner," from Mother. *Id.* at 20. Klemme stated that in the morning of June 19, he returned to his girlfriend's home and learned that MCCC was looking for him, so he went to MCCC and turned himself in. Klemme conceded at the hearing that he had received the vibration alerts on his GPS device, but he believed that it was malfunctioning, given that he had walked through some puddles, and it was raining that night.

[9] The State recalled Beck, who testified that MCCC's GPS devices are waterproof and that they would not malfunction because someone stepped in a puddle of water. He said a person can shower in the device, but cannot submerge it "for a long period of time." *Id.* at 23. He further observed that "if the equipment were to malfunction," MCCC would not receive the defendant's location and GPS coordinates. *Id.* at 22. In this case, Beck observed that Klemme's report "shows him moving around in the area zones[,]" and thus, it was not malfunctioning. *Id.*

[10] At the conclusion of the hearing, the trial court found that Klemme (1) "failed to report to the probation department for intake" and (2) entered the exclusionary zone multiple times on the night in question and thereby "failed to comply with the rules and regulations of [MCCC]." *Id.* at 26. The trial court also noted that Klemme did not contact MCCC until "a whole day later . . .

that next day when your girlfriend told you that you needed to call [MCCC]" and thus failed to maintain communication with MCCC. *Id*. at 27-28. The trial court also expressed concern that Klemme did not go to MCCC and obtain his GPS device until 4:30 p.m. on June 18, "when you should have been there first thing in the morning"; the trial court observed, "[Y]ou spent the whole entire day not being monitored." *Id*. at 27. The trial court found Klemme "in violation of both [MCCC] and [his] probation placement," and it ordered him to serve 180 days of his previously-suspended sentence. *Id*. at 30. Klemme now appeals.

## Discussion and Decision

[11] Klemme asserts that it was an abuse of the trial court's discretion to revoke his probation "in light of [] Klemme's difficult personal circumstances after being released from the jail[.]" *Appellant's Br*. at 8. Klemme essentially claims that the evidence did not support the revocation. More specifically, his claim is that the trial court did not consider certain "extenuating circumstances," such as his difficulty in finding a place to stay the night, causing him to roam to multiple friends' homes some of which were located in the exclusionary zone, and the fact that he stepped in puddles and the GPS device may have malfunctioned. *Appellant's Br*. at 4, 8, 10.

[12] A probation revocation proceeding is in the nature of a civil proceeding, and, therefore, the alleged violation need be proved only by a preponderance of the evidence. *T.W. v. State*, 864 N.E.2d 361, 364 (Ind. Ct. App. 2007), *trans. denied*.

Violation of a single condition of probation is sufficient to revoke probation. *Id*. As with other sufficiency issues, we do not reweigh the evidence or judge the credibility of witnesses. *Id*. We look only to the evidence that supports the judgment and any reasonable inferences flowing therefrom. *Id*. If there is substantial evidence of probative value to support the trial court's decision that the probationer committed any violation, revocation of probation is appropriate. *Id*.

[13] Here, on June 19, 2015, MCCC filed a notice of MCCC violation, alleging that Klemme entered an exclusionary zone multiple times, failed to comply with the rules and regulations of MCCC, and failed to maintain communication with MCCC. On June 23, 2015, the State filed a separate notice of probation violation, which alleged that Klemme failed to report to the probation department for intake and failed to comply with MCCC. *Appellant's App*. at 30-31, 33. In accordance with Indiana Code section 35-38-2-3, a trial court has three options if a defendant violates probation. It may: (1) continue the defendant's probation; (2) extend the probationary period for not more than one year beyond the original probationary period; or (3) order execution of all or part of the suspended sentence. Ind. Code § 35-38-2-3(h); *Williams v. State*, 883 N.E.2d 192, 195 (Ind. Ct. App. 2008). In revocation cases, the probationer is entitled to present mitigating evidence to demonstrate that the violation does not warrant revocation. *Sparks v. State*, 983 N.E.2d 221, 225 (Ind. Ct. App. 2013).

[14]   Here, at the probation revocation hearing, Klemme conceded that he did not report to the probation department at any time. *Tr.* at 19. He offered no argument or explanation to the trial court for his admitted failure to report, nor does he provide any justification on appeal. Klemme's failure to report to probation was a violation of the conditions of his probation and provided sufficient grounds for the trial court to revoke his probation. *T.W.*, 864 N.E.2d at 364 (violation of single condition of probation is sufficient to revoke probation).

[15]   Even excluding the failure-to-report violation, the State presented sufficient evidence that Klemme violated his probation by failing to comply with MCCC's rules and regulations. Beck testified as to the MCCC maps which showed the exclusionary zone, the buffer zone, and pinpointed Klemme's locations, according to the information generated by and sent from the GPS device. The maps reflected the locations where Klemme had been present and illustrated that, throughout the night, Klemme repeatedly passed the buffer zone and entered the restricted zone at least several times. Beck testified that the GPS device would have vibrated to warn Klemme and that Klemme had been instructed to turn the other direction upon receiving such a warning. The reports illustrated that Klemme did not do so, and Klemme admitted that he went to his friend's home that is located essentially across the street from Mother's home.

[16]   Klemme acknowledged that he repeatedly received the vibration warnings, but maintained that he believed the GPS device was malfunctioning since it was

raining, and he had stepped in puddles that night. Beck testified that the GPS device is waterproof and stepping in puddles would not affect it, unless the person submerged the device for an extended period of time. Beck further testified that Klemme's GPS device was correctly operating, because it would not have sent the signals and locations if it was not operating properly.

[17] The trial court rejected Klemme's claims that the GPS device was not working properly and found that his explanations of where he went, as well as when and why, were not consistent or believable. Klemme's arguments on appeal, claiming "extenuating circumstances," are requests to reweigh the evidence. *Appellant's Br*. at 4, 10. However, it is for the trial court to assess witness credibility, and we do not reweigh evidence on appeal. *Whatley v. State*, 847 N.E.2d 1007, 1010 (Ind. Ct. App. 2006).

[18] The evidence is undisputed that Klemme did not report to probation, and the evidence most favorable to the probation court's judgment is that Klemme repeatedly entered the exclusionary zone, despite receiving warnings to turn and leave the area. Thus, the State presented sufficient evidence to support the revocation, and the trial court did not abuse its discretion when it revoked his probation and ordered Klemme to serve 180 days of his originally-suspended sentence.

[19] Affirmed.

[20] Mathias, J., and Brown, J., concur.